# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDI RUSH,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br><br>ISLANDS RESTAURANTS, LP, etc., et al.,<br><br>　　　　　Defendants. | CASE NO. 11cv1312-LAB (POR)<br><br>**ORDER STRIKING SUPPLEMENTAL BRIEFING; AND**<br><br>**ORDER DENYING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**Supplemental Briefing**

　　　　Plaintiff Sandi Rush, through counsel, without obtaining a hearing date from this Court and without obtaining leave, filed a renewed motion for summary judgment. In response Defendant Islands Restaurants filed an opposition as well as its own cross motion for summary judgment. Regardless of whether the Court construes these as supplemental briefing or as new motions, the documents violate this District's local rules and are improperly filed. *See* Civil Local Rule 7.1(b) ("All hearing dates for any matters on which a ruling is required must be obtained from the clerk of the judge to whom the case is assigned."); 7.1(e) (providing for the filing of motions, oppositions, and reply memoranda, but not supplemental briefing). *See also Johnson v. Wennes*, 2008 WL 4820126 at *1

(S.D.Cal., Nov. 5, 2008) ("The Civil Local Rules do not provide for supplemental briefing or submissions after a motion has been fully briefed; therefore, in order to file a supplemental document . . . , plaintiff is required to seek leave of Court.") The Court can properly strike documents filed in violation of local rules. *Kashin v. Kent*, 342 Fed.Appx. 341, 341 (9th Cir. 2009) (affirming district court's denial of motion as untimely after improperly-filed motion was stricken for violation of local rules).

The supplemental documents (Docket nos. 46 and 47) are **ORDERED STRICKEN**. The Clerk is directed to remove them from the docket. Both parties are **ORDERED** not to file any more supplemental briefing without leave. At the evidentiary hearing, it was apparent the parties had failed to meet and confer, and both parties had prepared for an entirely different type of hearing than the Court's order had set. At the close of the hearing, the Court admonished the parties to follow its orders and applicable rules. The Court reiterates that admonition now, and cautions the parties that sanctions may be imposed if violations continue.

**Motion for Preliminary Injunction or TRO**

Rush also filed a pleading styled "Emergency Motion for Preliminary Injunction Preventing Spoliation of Evidence Until Trial" and "Emergency Motion for Temporary Restraining Order Preventing Spoliation of Evidence Until Court Rules on MSJs." (Docket no. 45, the "Motion.") While some of Rush's supplemental state claims still survive, the only surviving federal claim is her claim that the restaurant's parking lot is uneven and violates the ADA. The Court's earlier rulings, both written and delivered from the bench, make clear that if this one remaining federal claim were dismissed, the supplemental state claims would be dismissed as well. *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (when federal claims are dismissed before trial, state law claims normally will be dismissed as well).

The Motion is frivolous on many levels. First, Rush has already taken discovery, and at the time the Motion was filed had a motion for summary judgment pending based on that evidence. The Motion itself in fact alleges that the evidence has been well documented.

(Motion at 1:6–7 ("The record is replete with evidence of their failure to design, construct, and maintain a compliant parking lot . . . .")) In other words, it is clear beyond any reasonable doubt that no spoliation of evidence is occurring.

Second, the complaint alleges that the parking lot is noncompliant with the ADA, that this inconveniences and endangers her. The complaint asks that the Court order the restaurant to repair the parking lot so that she can visit and dine at the restaurant without fear of injury. Now, the Motion asks that the parking lot <u>not</u> be repaired. It alleges that repairing the parking lot is inconveniencing Rush. (Motion at 2:6–10 ("The record is replete with . . . their repeated attempts to destroy evidence, forcing plaintiff to expend thousands of dollars in costs and repeatedly fly to southern California to inspect the destruction.")) This allegation is inexplicable, because Rush has allegedly patronized the restaurant regularly and wants to continue to eat there; all she is asking is that barriers be removed so that she can do so safely and conveniently. (*See* Docket no. 25-2 (Mot. for Summ. J.), 1:4–2:17 (arguing that Rush repeatedly patronized the restaurant and encountered barriers there that denied her full and equal access because of her disability); Docket no. 25-5 (Rush Decl. in Supp. of Mot. for Summ. J.), 2:3–17 (attesting to Rush's repeated visits to the restaurant and her dissatisfaction with the slope of the parking lot), *id.* at 3:10–12 (declaring that Rush will encounter the same barriers at the restaurant in the future).) The Motion now alleges she lives elsewhere and blames the restaurant for forcing her to travel to San Diego to visit it.

If the Motion's allegations were true, there would be no reason for this case to go forward. The ADA protects disabled people from discrimination at accommodations they plan to visit in the future; it is not an "open-ended private attorney general statute" allowing plaintiffs to seek removal of barriers at public accommodations they have no intention or desire to use. *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc) ("An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury.") *See also Bodley v. Plaza Management Corp.*, 331 Fed.Appx. 547, 547 (9th Cir. 2009) (citing *D'Lil v. Best Western Encina Lodge & Suites*, 538

F.3d 1031, 1037 (9th Cir. 2080); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008)) (affirming dismissal of ADA claim, where plaintiff failed to demonstrate that he intended to return to patronize the business).

It appears more likely, however, that the Motion actually means one of Rush's attorneys[1] has to fly from northern California to inspect the restaurant parking lot personally. If this is what the Motion means, it is simply wrong. There are many local people whom her attorneys might hire to inspect and survey the parking lot; certainly, no attorney would need to fly in from Chico, where Rush's attorneys' law office is, to inspect the parking lot personally. And, in fact, legal training is hardly relevant to the task. Surveying a parking lot to determine its slope requires training in surveying, architecture, construction, or some allied field. And Rush herself has relied on a local architecture firm to visit and conduct an ADA accessibility survey of the restaurant. (Mot. for Summ. J., Report of Reed Settle, Architect (Docket no. 25-8)). In short, there is no reason for Lynn Hubbard III, Scottlynn Hubbard, or any attorney from their firm to make repeated long-distance trips to this District merely to inspect the restaurant's parking lot.

The Motion also spills over into summary judgment territory, arguing that parking lot repairs amount to spoliation of evidence, and that spoliation of evidence supports summary judgment in its favor. (Motion, 1:17–21.) In fact, what is taking place is repair of a parking lot Rush claims is in violation of the ADA. What Rush calls spoliation of evidence is actually subsequent remedial measures, which are inadmissible. *See* Fed. R. Evid. 407.

Finally, the Motion does not cite the standard for issuance of motions for preliminary injunctive relief. If Rush's counsel had reviewed the law governing such relief, it would have been apparent the request fails every test. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

---

[1] Several attorneys from the same firm have appeared representing Rush. Lynn Hubbard III, Esq. signed the Motion. Scottlynn Hubbard signed the proof of service and appeared at the hearing, however, as did an associate at the Hubbards' law firm, Daniel Watts. Mr. Watts also conducted measurements of the parking lot using a carpenter's level, and both his measurements as well as a video of him measuring the parking lot were submitted following the evidentiary hearing, to confirm that Rush still believed the parking lot was noncompliant.

in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Motion makes no effort to show Rush is likely to prevail on the merits. In fact, as discussed earlier, if the restaurant parking lot is successfully repaired and brought into compliance with the ADA, she will not prevail—although she will of course have obtained full access to the restaurant. Certainly Rush will not suffer irreparable harm if the parking lot is repaired. Quite the contrary, in fact: she will be able to access the restaurant without inconvenience or harm, which is what her complaint says she wants.

There are no equities favoring issuance of the injunction, and many that would counsel against it. For example, as an ongoing business, the restaurant needs to maintain its facilities, and the Court is disinclined to forbid the restaurant to make needed repairs.[2] In addition, requiring the restaurant to maintain its parking lot in a condition that (allegedly) violates the ADA would expose the restaurant to other lawsuits, and inconvenience other customers. Finally, assuming Rush's claim is meritorious, what she is asking is that the restaurant be forbidden to comply with the ADA. In essence, she is asking the Court to order the restaurant to violate a law designed to protect the public. This is decidedly not in the public interest.

More generally, it appears the Motion misunderstands the purpose of ADA litigation. The ADA is intended to prevent discrimination against disabled individuals. *Rohr v. Salt River Project Agricultural Imp. & Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009) (citing statutory authority). Although state law incorporates the ADA's standards, the ADA does not exist to serve state law, or to protect state-created causes of action. Litigation in federal court, similarly, is intended to vindicate legal rights, and not merely for its own sake. *See Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006) (citing *Celotex v. Catrett*, 477

---

[2] Although the Motion implies the repairs are being made for illicit reasons rather than for sound and legitimate business reasons, it is common knowledge that commercial construction work is expensive. Businesses do not spend money repaving their parking lots unless it is considered necessary.

U.S. 317, 327 (1986)) (noting the "sound proposition that litigation for its own sake is not a judicious use of resources"); *TVT Records v. Island Def Jam Music Group*, 447 F. Supp. 2d 311, 315 n.5 (S.D.N.Y. 2006) (admonishing parties for needlessly prolonging the action, and "pushing it to the border of litigation for its own sake").

More than once, the Court has pointed out to Rush's counsel that the Supreme Court has endorsed the practice of eliminating ADA violations, which results in ADA claims becoming moot and the denial of attorney's fees. *See generallly Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Resources*, 532 U.S. 598 (2001) (affirming denial of attorney's fees, where state during course of litigation repealed statute that allegedly violated ADA, rendering ADA claims moot); *see also Molski v. Foster Freeze Paso Robles*, 267 Fed.Appx. 631, 632 (9th Cir. 2008) (citing *Buckhannon* at 605) (affirming district court's order dismissing ADA claims as moot, dismissing supplemental state claims,[3] and denying attorney's fees). Once all barriers have been removed and a public accommodation has become ADA-compliant, a plaintiff ought to be glad that she can use the facility. Instead, the opposite is happening. The Motion seems to view a fully ADA-compliant facility as a disaster, and seeks to block removal of barriers simply so that the lawsuit can be prolonged. This is not in Rush's interest or the public interest, and is not a proper purpose for litigating.

The Motion is **DENIED**.

**IT IS SO ORDERED**.

DATED: October 10, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[3] The panel, however, corrected the district court's error of dismissing supplemental state claims with prejudice, and remanding for dismissal without prejudice. 267 Fed.Appx. at 633.